IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

URSULA M. HOLMES,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C10-2042

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Holmes' Education and Employment Background* . . . . . . . . . . . . 5
     B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . 5
          1.   *Holmes' Testimony* . . . . . . . . . . . . . . . . . . . . . . . 5
          2.   *Vocational Expert Testimony* . . . . . . . . . . . . . . . . . . 7
     C.   *Holmes' Medical History* . . . . . . . . . . . . . . . . . . . . . . 8

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . 11
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . 11
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . 13
          1.   *Dr. Palma's Opinions and Sadler's Opinions* . . . . . . . . . . 14
          2.   *Sadler's Opinions* . . . . . . . . . . . . . . . . . . . . . . 16
          3.   *Fully and Fairly Developed Record* . . . . . . . . . . . . . . 20
          4.   *Credibility Determination* . . . . . . . . . . . . . . . . . . 22

VI.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Ursula M. Holmes on June 1, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Holmes asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Holmes requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On July 1, 2005, Holmes applied for disability insurance benefits. In her application, Holmes alleged an inability to work since March 31, 2005 due to muscle problems and fibromyalgia. Holmes' application was denied on November 4, 2005. On January 17, 2006, her application was denied on reconsideration. On March 13, 2006, Holmes requested an administrative hearing before an Administrative Law Judge ("ALJ"). On July 31, 2007, Holmes appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. Holmes and vocational expert Marian S. Jacobs testified at the hearing. In a decision dated April 1, 2008, the ALJ denied Holmes' claim. The ALJ determined that Holmes was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing her past relevant work as a pharmacy clerk, jailer, retail salesperson, teacher aide, and apartment manager. Holmes appealed the ALJ's decision. On April 5, 2010, the Appeals Council denied Holmes' request for review. Consequently, the ALJ's April 1, 2008 decision was adopted as the Commissioner's final decision.

---

[1] Ms. Holmes last name on the caption for the Complaint is incorrectly spelled "Holms."

On June 1, 2010, Holmes filed this action for judicial review. The Commissioner filed an answer on November 18, 2010. On January 5, 2011, Holmes filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform her past relevant work as a pharmacy clerk, jailer, retail salesperson, teacher aide, and apartment manager. On March 4, 2011, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 28, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Holmes' Education and Employment Background

Holmes was born in 1967. She is a high school graduate. Following high school, she earned a two-year degree in general studies. She also received educational training in communications and human resources as a member of the National Guard.

The record contains a detailed earnings report for Holmes. The report covers Holmes' employment history from 1980 to 2006. From 1982 to 1991, Holmes earned between $775.54 (1982) and $9,337.56 (1990). She had no earnings in 1992. From 1993 to 2005, she earned between $133.38 (2002) and $25,737.63 (2000). She earned $1,942.36 in 2006.

### B. Administrative Hearing Testimony

#### 1. Holmes' Testimony

At the administrative hearing, Holmes' attorney asked Holmes to discuss her diagnosis of fibromyalgia. Holmes explained that she has generalized pain all over her body, including her forearms, back, knees, hips, calves, wrists, neck, and shoulders. She described her pain as sharp and stabbing. Holmes' attorney then asked Holmes specific questions regarding her pain:

> Q: If you had to repetitively use your hands or arms, would that cause additional pain?
>
> A: Yes, it would.
>
> Q: And if you had to do a lot of sitting, or a lot of standing, or a lot of walking, would that cause the pain to increase?
>
> A: Yes, it would.
>
> Q: What about sitting?
>
> A: Sitting, as long as I'm able to adjust or move, it's minimized.
>
> Q: Do you have days when the pain is bad enough that you don't function well?
>
> A: Yes.
>
> Q: How many days in an average week or month would that occur?

| | |
|---|---|
| A: | Two to three. |
| Q: | In a week or month? |
| A: | In a week. |
| Q: | So, up to eight to 12 days per month, you wouldn't be able to function, because of the pain? |
| A: | Yes. . . . |
| Q: | Does the, does the pain, on those days, affect your attention and concentration? |
| A: | Yes, it does. |

(Administrative Record at 423-24.) Holmes also testified that her pain causes fatigue and tiredness. She claimed that the pain also causes her difficulty with sleeping.

Next, Holmes' attorney asked Holmes to describe her functional abilities:

| | |
|---|---|
| Q: | How much do you think you can lift now? |
| A: | No more than 10 pounds. |
| Q: | How, how far could you carry that weight? |
| A: | I'm not sure. About five feet, 20 feet. |
| Q: | Five to 20 feet? |
| A: | Um-hum. |
| Q: | Could you carry that weight repetitively, or just occasionally. |
| A: | Occasionally. |
| Q: | How long do you think you could stand in one position? |
| A: | No more than 30 minutes without having to adjust. |
| Q: | What would happen if you stood longer? |
| A: | My legs would start getting numb. |
| Q: | How long can you sit at a time? |
| A: | Thirty minutes to an hour. |
| Q: | What would happen after that? |
| A: | It would -- I would start getting stiff. |
| Q: | How far can you walk? |
| A: | No more than five blocks. |
| Q: | What would occur if you tried to walk farther than that? |
| A: | My legs would start -- have shooting pains. |

(Administrative Record at 425.) With regard to her functional limitations, Holmes also testified that she could occasionally stoop, bend, and twist. She further indicated that repetitive activity with her hands and arms resulted in numbness and pain.

## 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for an individual who:

> could lift 20 pounds occasionally, 10 pounds frequently. [The individual] could only occasionally balance, stoop, crouch, kneel, crawl, or climb.

(Administrative Record at 435.) The vocational expert testified that under such limitations, Holmes could perform her past work as a pharmacy clerk, master control jailer, retail salesperson, teacher aide, and apartment manager. The ALJ provided the vocation expert with a second hypothetical which was identical to the first hypothetical except that the individual could:

> only stand or walk a total of two hours during a workday; [the individual] would require two or more absences per month; and a slow pace for one-third of the day when [he or] she is there.

(Administrative Record at 435.) The vocational expert testified that under such limitations, Holmes could not find competitive employment.

Holmes' attorney also provided the vocational expert with a hypothetical for an individual who:

> could occasionally lift 10 pounds; no repetitive lifting; could rarely twist, stoop, bend, crouch, or squat, or climb ladders or stairs; can sit 30 minutes at a time, stand 30 minutes at a time; sit less than two hours in an eight-hour workday; stand and walk less than two hours in an eight-hour workday; must be allowed to walk around at unpredicted intervals for five minutes; no repetitive use of hands or arms; only occasionally gripping and fine or gross manipulation; must be allowed to shift positions at will; low stress; no work at heights or around dangerous or moving machinery; no close attention to detail; and would miss up to eight days a month due to her symptoms or, or treatment.

(Administrative Record at 436.) The vocational expert testified that under such limitations, Holmes could not find competitive employment.

### C. Holmes' Medical History

On May 4, 2005, Holmes was referred to Dr. Ivo Bekavac, M.D., for evaluation of arm and leg numbness. Upon examination, Dr. Bekavac diagnosed possible bilateral carpal tunnel syndrome and intermittent lumbosacral sensory radiculopathy. Dr. Bekavac obtained an EMG of Holmes' four extremities and an MRI of her lumbosacral spine. The results of the EMG were normal for both upper and lower extremities. Dr. Bekavac found no EMG evidence of cervical or lumbosacral motor radiculopathy, polyneuropathy, or myopathy. Holmes' MRI was also unremarkable. Dr. Bekavac noted two levels of "very mild" bulging discs, but no disc herniation. Dr. Bekavac also found no evidence of lumbosacral radiculopathy. Dr. Bekavac opined that Holmes' lower back pain was "probably" musculoskeletal in etiology.

On June 7, 2005, Holmes met with Dr. Gene S. Gessner, M.D., complaining of back pain and right lower extremity radiation. In discussing Holmes' symptoms, Dr. Gessner noted that "[s]he rates her pain at a 10. Describes it as [] stabbing and knife like. It lasts for several hours all day on a constant basis. Worse in the evening and night. Affects sleep and ability to work. Made worse with bending forward, bending backwards, standing and at work."[2] Upon examination, Dr. Gessner diagnosed spinal stenosis, facet syndrome, lumbar radiculopathy, and myofascial pain. Dr. Gessner performed a lumbar epidural steroid injection on Holmes as treatment.

On August 12, 2005, Holmes returned to Dr. Gessner, complaining of back pain with left lower extremity radiation. Dr. Gessner noted that Holmes' June lumbar epidural steroid injection provided her no pain relief. Upon examination, Dr. Gessner diagnosed Holmes with spinal stenosis, lumbar radiculopathy, myofascial pain, and possible fibromyalgia. Dr. Gessner recommended medication as treatment.

On September 6, 2005, Holmes met with Helen Sadler, ARNP, complaining of back pain and leg numbness. Holmes informed Sadler that she "has multiple tender spots.

---

[2] *See* Administrative Record at 193.

Even to touch her skin, it is tender."[3] Sadler noted that Holmes had been off work on short-term disability since April. Upon examination, Sadler found that Holmes' extremities appeared "normal," and she had "good" range of motion. Sadler diagnosed Holmes with fibromyalgia. Sadler recommended medication and exercise as treatment.

On October 6, 2005, Holmes was evaluated by Dr. Claro T. Palma, M.D. Upon examination, Dr. Palma diagnosed Holmes with diffuse myalgia, secondary to fibromyalgia, and symptoms consistent with irritable bowel syndrome. Dr. Palma told Holmes that fibromyalgia is a chronic condition with no active cure, and she must "maintain muscle strength and tone by exercising on a regular basis."[4] Dr. Palma also treated her with medication.

On October 26, 2005, Dr. Melodee S. Woodard, M.D., reviewed Holmes' medical records and provided disability determination services ("DDS") with a physical residual functional capacity ("RFC") assessment for Holmes. Dr. Woodard determined that Holmes could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Woodard also determined that Holmes could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Woodard found no manipulative, visual, communicative, or environmental limitations.

On November 14, 2005, Holmes met with Sadler complaining of difficulties sitting at work. Sadler noted that Holmes:

> comes in requesting a work statement that she needs to change her position ever [sic] 15 minutes. She has fibromyalgia. Sitting or standing more than 15 minutes at a time increases her pain significantly.

---

[3] *Id.* at 266.

[4] *Id.* at 234.

9

(Administrative Record at 263.) Upon examination, Sadler found that Holmes' "[g]ait is steady. Patient goes from sitting to standing while in the office. Movements are smooth and coordinated. There are no inflamed joints or erythema."[5] Sadler provided Holmes with a note that stated: "Ms. Holmes needs to change from sitting to standing every 15 mins. due to her medical condition."[6]

On January 12, 2006, a non-examining consultative doctor reviewed Holmes' medical records and provided DDS with a physical RFC assessment for Holmes.[7] The consultative doctor determined that Holmes could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. The consultative doctor also determined that Holmes could occasionally climb, balance, stoop, kneel, crouch, and crawl. The consultative doctor found no manipulative, visual, communicative, or environmental limitations.

In February 2006, Holmes had a follow-up visit with Dr. Palma. Her diagnosis was fibromyalgia with variable persistent symptoms. Dr. Palma continued to treat her with medication. At another appointment in May, Dr. Palma, in addition to the fibromyalgia diagnosis, also diagnosed chronic back pain of an unclear etiology. Dr. Palma opined that "[a]t this time I have been unable to document any specific objective findings to explain her symptoms."[8] Dr. Palma continued to treat Holmes with medication. In September,

---

[5] *See* Administrative Record at 263.

[6] *Id.* at 254.

[7] The record contains only an illegible signature for the consultative doctor.

[8] *See* Administrative Record at 281.

Dr. Palma opined that Holmes "may have reached maximum medical improvement with medical intervention."[9]

On August 18, 2006, at the request of Holmes' attorney, Dr. Palma answered a Fibromyalgia Questionnaire. Dr. Palma diagnosed Holmes with fibromyalgia, irritable bowel syndrome, and chronic back pain. Dr. Palma identified the following symptoms for Holmes: multiple tender points, nonrestorative sleep, irritable bowel syndrome, numbness and tingling, and sicca symptoms. Dr. Palma opined that Holmes' experience of pain would frequently interfere with her attention and concentration during a typical eight-hour workday. Dr. Palma determined that Holmes could: (1) sit for 30 minutes at one time, (2) stand for 30 minutes at one time, (3) sit for less than 2 hours with normal breaks during an eight-hour workday, (4) stand and walk for less than 2 hours with normal breaks during an eight-hour workday, (5) perform a job that permits shifting positions at will from sitting, standing, or walking, and (6) occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift more than 20 pounds. Dr. Palma also found that Holmes could rarely twist, stoop, crouch, or climb ladders or stairs. On July 30, 2007, at the request of Holmes' attorney, Dr. Palma filled out a second Fibromyalgia Questionnaire. Dr. Palma's answers were identical to the answers provided in the August 2006 questionnaire.[10]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Holmes is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

---

[9] *Id.* at 286.

[10] *Compare* Administrative Record at 409-412 (July 2007 questionnaire) with Administrative Record at 282-85 (August 2006 questionnaire).

(1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963,

971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007));
20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Holmes had not engaged in substantial gainful activity since March 31, 2005. At the second step, the ALJ concluded from the medical evidence that Holmes had the following severe combination of impairments: fibromyalgia, degenerative disc disease, esophagitis, and irritable bowel syndrome. At the third step, the ALJ found that Holmes did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. At the fourth step, the ALJ determined Holmes' RFC as follows:

> [Holmes] has the residual functional capacity to perform light work with the ability to lift 20 pounds occasionally; and 10 pounds frequently; occasionally balancing, stooping, crouching, kneeling, crawling and/or climbing.

(Administrative Record at 23.) Also at the fourth step, the ALJ determined that Holmes was capable of performing her past relevant work as a pharmacy clerk, jailer, retail salesperson, teacher aide, and apartment manager. Therefore, the ALJ concluded that Holmes was not disabled.

### B. Objections Raised By Claimant

Holmes argues that the ALJ erred in four respects. First, Holmes argues that the ALJ failed to properly weigh the opinions of her treating physician, Dr. Palma. Second, Holmes argues that the ALJ failed to properly consider the opinions of Sadler regarding her need to change positions during a typical eight-hour workday. Third, Holmes argues that because the ALJ failed to properly consider the opinions of Dr. Palma and Sadler, he also failed to fully and fairly develop the medical evidence in the record. Lastly, Holmes argues that the ALJ failed to properly evaluate her subjective allegations of disability.

## 1.    Dr. Palma's Opinions and Sadler's Opinions[11]

Holmes argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Palma. Specifically, Holmes argues that the ALJ failed to provide any reasons for discounting Dr. Palma's opinions as they relate to her ability to lift, stand, sit, and walk. Holmes requests that this matter be reversed and remanded for further consideration of Dr. Palma's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the

---

[11] In addition to considering Holmes' arguments with regard to the opinions of Dr. Palma and Sadler, the Court will also address Holmes' third argument, that is, whether the ALJ fully and fairly developed the medical evidence in the record, in section *V.B.1* of this ruling.

doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

The ALJ's decision provides a detailed summary of the opinions expressed by Dr. Palma.[12] In discussing Dr. Palma's opinions, the ALJ points out that: (1) Dr. Palma found "no evidence for an underlying autoimmune disorder, myopathy or an inflammatory process";[13] (2) Holmes' EMG and nerve condition studies were negative;[14] (3) Dr. Palma "was unable to document any specific objective findings to explain [Holmes'] symptoms";[15] (4) Dr. Palma opined that Holmes was "restricted to sedentary work activity," but was not totally disabled from any work "as she was a suitable candidate for further rehabilitation services."[16] Having reviewed the entire record, the Court finds that the ALJ properly considered the opinion evidence provided by Dr. Palma. While the

---

[12] *See* Administrative Record at 21-22.

[13] *Id.* at 21.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 22.

ALJ's decision is somewhat lacking in clarity, the Court further finds that the ALJ fully and fairly developed the record with regard to Dr. Palma's opinions. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."). Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ. *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)). Because the ALJ properly considered Dr. Palma's opinions, the Court concludes that Holmes' request for reversal and remand to allow further consideration of Dr. Palma's opinions, is without merit. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.  *Sadler's Opinions*

Holmes also argues that ALJ failed to address or consider Sadler's opinions as they relate to her functional limitations. Specifically, Holmes argues that the ALJ failed to provide any reasons for discounting Sadler's opinion that she needs to change her position from sitting to standing every 15 minutes. Holmes requests that this matter be reversed and remanded for further consideration of Sadler's opinions.

Sadler, as a nurse practitioner, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Sadler is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and

the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In considering Sadler's opinions, the ALJ stated:

> [Holmes] joined the Army National Guard and was surprised to learn that she was required to participate in boot camp despite her prior military experience. [Holmes] alleges an inability to participate in boot camp exercises due to fibromyalgia and back pain. . . . On April 12, 2007, [Holmes] requested a letter from [Sadler] to excuse her from her military obligation due to fibromyalgia symptoms and back problems. [Holmes] noted that it would provide her great relief to know she would not be deployed to Iraq.

(Administrative Record at 22.) On March 27, 2007, Holmes met with Sadler complaining of back pain. At her appointment, Holmes reported to Sadler that she had "recently joined the military and she found out she had to redo boot camp. She was surprised at this, as she had already had some military experience. But she feels the she can't tolerate going

back in boot camp because of her fibromyalgia."[17]   In her treatment notes, Sadler indicated that Holmes was "going to talk to her military recruiter to see if she needs some type of medical documentation regarding her medical condition."[18]   In a letter dated April 12, 2007, Holmes requested that Sadler provide her with a letter in support of her release from her military obligation.   Specifically, Holmes wrote:

> [The military] will release me but only at your request and of course with documentation that I have been under your care, taking medications, undergoing physical therapy, and that it is noted that I have fibromyalgia symptoms or problems with my back. . . . That is what they will need in order to release me on honorable but medical conditions.  You do not know how much stress that will relieve me of, to know that I will not have to be deployed next month if I am released.  I know that my body will not be able to endure the physical challenges that I would have to go through if I have to leave and I simply can not do this anymore.  Your help in this matter would be more than appreciated[.] . . . But just FYI, this is some of the information that my officials would need to have in your letter. It has to be to the point and affirmative of your recommendation for release from my duties.

(Administrative Record at 380.)   On April 12, 2007, Sadler provided Holmes with the following letter:

> Ms. Holmes is a patient under my care whom I have known since March 2003.    Patient is under the care of a rheumatologist in our area Claro Palma, M.D. for fibromyalgia.  She also is followed in this office for chronic back pain with degenerative disk disease as demonstrated on x-rays of the cervical and lumbar spine.  The patient takes anti-inflammatories and muscle relaxers several times a day; plus, she periodically need physical therapy for her back.

---

[17] *See* Administrative Record at 384.

[18] *Id.*

> Based on this information, it is my belief that Ms. Ursula
> Homes [*sic*] would not be able to endure the physical
> challenges of being in the military.

(Administrative Record at 379.)

Similarly, on November 14, 2005, at an appointment with Sadler, Holmes asked Sadler for a note to provide to employer stating that she needed to change position from sitting to standing every 15 minutes.[19] In her treatment note, Sadler stated that Holmes:

> comes in requesting a work statement that she needs to change
> her position ever [*sic*] 15 minutes. She has fibromyalgia.
> Sitting or standing more than 15 minutes at a time increases
> her pain significantly.

(Administrative Record at 263.) However, upon examination, Sadler found that Holmes' "[g]ait is steady. Patient goes from sitting to standing while in the office. Movements are smooth and coordinated. There are no inflamed joints or erythema."[20] Nevertheless, Sadler provided Holmes with the note she requested. The note stated: "Ms. Holmes needs to change from sitting to standing every 15 mins. due to her medical condition."[21]

While the ALJ could have better articulated his reasons for discounting Sadler's opinions, the Court believes that the ALJ fully considered Sadler's opinions and found them inconsistent with the record as a whole. In particular, a full review of the record demonstrates that Sadler was willing to write notes to employers providing limitations for Holmes at Holmes' request, even if Sadler's treatment notes did not fully reflect such limitations.[22] In making this determination, the Court bears in mind that while an ALJ is

---

[19] Interestingly, in November 2005, Holmes was apparently working because she requested a note for her employer, even though she claims that she became disabled and unable to work on March 31, 2005.

[20] *See* Administrative Record at 263.

[21] *Id.* at 254.

[22] *Id.* at 254, 379.

required to fully and fairly develop the record, he or she "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id*. Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Sadler's opinions in accordance with SSR 06-03p. The ALJ fully and fairly developed the record with regard to Sadler's opinions. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Fully and Fairly Developed Record*

Holmes argues that the ALJ failed to fully and fairly develop the record. Specifically, Holmes argues that because the ALJ discounted the opinions of Dr. Palma and Sadler, the ALJ should have requested a consultative physical examination, including record review, evaluation, and statement of work-related limitations. Holmes maintains that this matter should be remanded to further development of the record.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ fully considered the opinions of treating sources, Dr. Plama and Sadler, including their determinations on Holmes' work-related limitations. The ALJ also considered the opinions of other treating sources and the opinions of two consultative doctors who provided DDS with physical RFC determinations. The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Therefore, the ALJ did not err by not ordering any

further consultative examinations for Holmes. *See Goff*, 421 F.3d at 791 (an ALJ should contact a treating physician for further information when "the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'") (quotation omitted); *Stormo*, 377 F.3d at 806 (an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped"); *Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

### 4. *Credibility Determination*

Holmes argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Holmes maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Holmes' testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the

objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> [Holmes] testified she is capable of cleaning house, sweeping, dusting, driving and running errands. [Holmes'] children have been removed from her care. [Holmes] requested a letter from Nurse Practitioner Sadler that would excuse her from her military obligation after joining the Army National Guard in November 2006, which can be quite demanding, both physically and emotionally.

> [Holmes] receives ongoing treatment from Dr. Palma, but she failed to request a letter from Dr. Palma regarding an excuse for her military obligation. It appears that [Holmes] has consciously attempted to portray limitations that may not be actually present in order to increase her chances of obtaining benefits. At the time of the hearing, [Holmes] continued to be a member of the National Guard. She testified she joined the Guard in November 2006 and the undersigned notes this is inconsistent with her assertions she became disabled on March 31, 2005. Accordingly, the undersigned concludes that [Holmes'] allegations and testimony regarding the severity of her disabling symptoms and limitations are credible only to the extent of the findings herein.

(Administrative Record at 22.)

Having reviewed the entire record, the Court finds that the ALJ adequately considered the *Polaski* factors in determining that Holmes' subjective allegations of pain and disability were not credible, including noting that Holmes' decision to join the National Guard in November 2006 was inconsistent with her assertion that she became disabled on March 31, 2005. *See Johnson*, 240 F.3d at 1148; *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons

explicitly discredited Holmes, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Palma and Sadler. The Court also finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case. Lastly, the Court finds that the ALJ properly determined Holmes' credibility with regard to her subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.   The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.   Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this 28ᵗʰ day of June, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA